UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>TAC FINANCIAL, INC.<br><br>Debtor.<br><br>CHRISTOPHER R. BARCLAY, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>ROY H. EDER; REMAR INVESTMENTS, L.P.; MICHAEL RAYMOND FRAGER; FRASER SISSON ASSOCIATES; CENTAURUS FINANCIAL, INC.; RELIASTAR LIFE INSURANCE COMPANY; and DOES 1 through 20,<br><br>Defendants. | Case Nos.:<br>3:15-cv-02681-GPC-NLS<br>3:16-cv-00139-GPC-NLS<br><br>**ORDER GRANTING DEFENDANTS REMAR'S AND FRAGER'S MOTIONS TO WITHDRAW THE REFERENCE**<br><br>3:15-cv-02681-GPC-NLS [ECF No. 2]<br><br>3:16-cv-00139-GPC-NLS [ECF No. 1] |

Defendants Remar Investments, L.P. ("Remar") and Michael Frager and FSA Integrated LLC [erroneously sued as Fraser Sisson Associates] (collectively "Frager" or "Frager Defendants") filed separate motions to withdraw the reference. Defendants Remar and Frager seek to withdraw the reference to the bankruptcy court with respect to an adversary proceeding commenced by Plaintiff Christopher R. Barclay, as Chapter 7 Trustee for TAC Financial, Inc. (the "Trustee") against Remar and others for claims arising out of the allegedly fraudulent conveyance of a life insurance policy from TAC Financial, Inc. (the "Debtor") to Defendant Roy H. Eder and subsequent transferees, including Remar. Any party wishing to oppose the motion had until February 19, 2016 with respect to Remar's motion and February 26, 2016 with respect to Frager's motion to respond. On February 26, 2016, Trustee filed a statement of non–opposition to both motions. The Court deems Defendants' motions suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having reviewed Defendants' motions and the applicable law, and for the reasons set forth below, the Court **GRANTS** Defendants' motions to withdraw the reference.

## FACTUAL BACKGROUND

On or about February 8, 2013, the Debtor submitted an application to ReliaStar Life Insurance Company ("ReliaStar") for a "key man" life insurance policy in the face amount of $5 million insuring the life of Eder[1], designating that the owner of the policy would be Debtor and that the source of funds to pay the policy premiums would be the Debtor. (AP Compl. ¶ 22.) The application was signed by and listed the Debtor's insurance agents/brokers as Michael Frager and Michael Sisson. (*Id.* ¶ 23) On or about June 6, 2013, ReliaStar issued its Policy No. AD20577953 ("the Policy") to the Debtor. (*Id.* ¶ 25.) The Policy listed "TAC Financial Services" the owner of the policy (*id.* ¶ 27), insured the life of Roy Eder and provided for a death benefit of $5 million (*id.* ¶ 26).

---

[1] Defendant Roy Eder was the Chief Executive Officer of the Debtor until approximately July 18, 2014. (*Id.* ¶ 2.)

1  On or about June 14, 2013, the Debtor faxed to ReliaStar an Electronic Funds Transfer ("EFT") authorization, signed by Steve Hong on behalf of the Debtor, which authorized ReliaStar to debit the Debtor's bank account to pay the premiums of the Debtor's Policy. (*Id.* ¶ 28.) Thereafter the monthly premium payments were made by the Debtor through direct debit of the Debtor's bank account. (*Id.*)

On December 27, 2013, ReliaStar sent a notice to the Debtor that the EFT payment for the payment of the monthly premium had been returned by the Debtor's bank as unpaid due to insufficient funds. (*Id.* ¶ 29.) By a letter dated February 13, 2014, ReliaStar informed the Debtor that the Policy had lapsed effective February 13, 2014. (*Id.*) On or about March 24, 2014, the Debtor submitted to ReliaStar an application to reinstate the Debtor's Policy, which was signed by the Debtor through Eder as the Debtor's CEO and Michael Frager as the Debtor's agent. (*Id.* ¶ 31.) By a letter dated April 3, 2014, ReliaStar informed the Debtor the application to reinstate had been approved and that a premium payment was due June 14, 2014. (*Id.* ¶ 32.)

On or about June 9, 2014, Eder was diagnosed with brain cancer. (*Id.* ¶ 33.) On or about June 9, 2014, the Debtor made a premium payment to ReliaStar. (*Id.* ¶ 34.) On June 24, 2014, the Debtor submitted to ReliaStar a new EFT authorization to debit the Debtor's bank account to pay the premiums, which was signed by Steve Hong on behalf of the Debtor. (*Id.* ¶ 35.) Thereafter, the monthly premiums were made by the Debtor through direct debit of the Debtor's bank account. (*Id.*)

On July 1, 2014, Michael Frager sent a fax to ReliaStar instructing ReliaStar to change the beneficiaries under the Debtor's Policy according to an attached Beneficiary Designation Form, which was signed by Eder on behalf of Debtor and changed the beneficiaries of the policy from the Debtor to members of Eder's family. (*Id.* ¶¶ 37–38.)

On or about July 8, 2014, the Division of Neurosurgery at Scripps Clinic Torrey Pines issued a letter stating that Eder has been diagnosed with cancer for which prognosis is terminal. (*Id.* ¶ 40.) On July 11, 2014, Frager faxed to ReliaStar a Transfer of Ownership form dated June 27, 2014, which provided for the transfer of ownership of the Debtor's

Policy from the Debtor to Eder. (*Id.* ¶ 41.) The Transfer of Ownership form was signed on behalf of the Debtor, as the current owner, by Eder as Chairman and CEO and by Eder on behalf of himself as the new owner. (*Id.*) In a letter dated July 15, 2014, ReliaStar confirmed that the ownership of the policy had been changed from the Debtor to Eder, effective June 27, 2014. (*Id.* ¶ 42.) The Debtor continued to pay the premiums on the Policy after the transfer of ownership. (*Id.* ¶ 43.)

On October 2, 2014, ReliaStar made a distribution under the Policy to Eder in the amount of $250,000.00. (*Id.* ¶ 44.) On or about December 11, 2014, Eder sold the Policy to Remar for a purchase price of $1,950,000.00. (*Id.* ¶ 45.) By a letter from ReliaStar to Remar dated December 15, 2014, ReliaStar confirmed the change in ownership of the Policy from Eder to Remar, effective December 10, 2014. (*Id.* ¶ 46.)

## PROCEDURAL HISTORY

The Debtor filed a voluntary bankruptcy petition on January 15, 2015. (*Id.* ¶ 15.) On August 11, 2015, the Trustee filed this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7069 against Eder, Remar and others to recover the Debtor's Key Man Life Insurance Policy or the value of the Debtor's Policy from Remar as a fraudulent transfer under 11 U.S.C. §§ 548, 550, and the value of all transfers by Eder to subsequent transferees of the $1.9 million received by Eder from Remar for the Policy and the $250,000 advance received by Eder from ReliaStar under 11 U.S.C. § 550. (*See In re TAC Financial, Inc.*, Adv. No. 15–AP–90145–CL7 ("AP").) Defendants Remar, Frager and others filed Answers and timely demands for jury trials.[2] Neither consent to having the

---

[2] Remar seeks judicial notice of excerpts of answers filed in the adversary proceeding by Defendants Remar (Ex. 1), Eder (Ex. 2), Centaurus Financial, Inc. (Ex 3), Michael Frager (Ex. 4) and FSA Integrated LLC (Ex. 5). (RJN, ECF No. 1–3.) Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), *overruled on other grounds by Galbraith v. County*

bankruptcy court conduct the jury trial.

On December 1, 2015, Remar filed a motion to withdraw the reference on the basis that Remar is entitled to have this matter decided by an Article III judge and does not consent to have the matter decided by a bankruptcy judge and on the additional ground that other defendants (if not Remar itself) are entitled to and have preserved their right to trial by a jury.  (Remar Mot., Case No. 15–cv–2681, ECF No. 1.)  On January 20, 2016, Frager also filed a motion to withdraw the reference on similar grounds.  (Frager Mot., Case No. 16–cv–0139, ECF No. 1.)  On February 26, 2016, the Trustee filed a non–opposition to withdrawal of the reference with respect to its claims against both Remar and Frager.

## LEGAL STANDARD

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, district courts have original jurisdiction in bankruptcy cases and may refer to bankruptcy judges two statutory categories of proceedings: "core" proceedings and "non–core" proceedings.  *See generally* 28 U.S.C. § 157.  "In general, a 'core proceeding' in bankruptcy is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'"  *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000) (citing *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987).  "'Non–core proceedings' are those not integral to the restructuring of debtor–creditor relations and not

---

*of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  A court may take judicial notice of its own files and of documents filed in other courts.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); *Hott v. City of San Jose,* 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders filed in state court cases).  The Trustee does not object to Remar's request.  The Court finds that these documents are part of public record and thus their accuracy cannot reasonably be questioned.  Accordingly, the Court hereby takes judicial notice of Exhibits 1–5.  (RJN, Exs. 1–5, ECF No. 1–3.)

involving a cause of action arising under title 11." *Id.* *See also* 28 U.S.C. § 157(b)(2) (providing non-exhaustive list of matters that constitute "core proceedings"). In core proceedings, a bankruptcy judge "may hear and determine . . . and enter appropriate orders and judgments," subject to the district court's traditional appellate review. § 157(b)(1). In non–core proceedings—those that are "not . . . core" but are "otherwise related to a case under title 11," § 157(c)(1)—final judgment must be entered by the district court after *de novo* review of the bankruptcy judge's proposed findings of fact and conclusions of law, *ibid.,* except that the bankruptcy judge may enter final judgment if the parties consent, § 157(c)(2).

The power to withdraw reference of a case from bankruptcy court is granted to a district court by 28 U.S.C. § 157(d), which provides that the district court "may withdraw, in whole or in part, any case or proceeding referred, on its own motion or on timely motion of any party, for cause shown." The Ninth Circuit has stated that the court should consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). The Second Circuit stated in *In re Orion Pictures Corp.*:

> A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non–core, since it is upon this issue that questions of efficiency and uniformity will turn . . . once a district court makes the core/non–core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.

4 F.3d 1095, 1101 (2d Cir.1993). One such related factor is whether a party has a right to jury trial, because the bankruptcy court is not entitled to conduct a jury trial on non–core matters without the consent of the parties. *See In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990).

//

## DISCUSSION

Defendants Remar and Frager—as well as the other defendants in the adversary proceeding—have requested a jury trial and have not agreed to have a jury trial conducted by the bankruptcy court. The Ninth Circuit has determined that bankruptcy courts cannot preside over jury trials in non–core matters without the consent of all parties. *In re Cinematronics,* 916 F.2d at 1451. Further, under 28 U.S.C. § 157(c)(1), a bankruptcy judge hearing a non–core proceeding must submit proposed findings of fact and conclusions of law to the district court, and the district court is required to review *de novo* those matters to which a party timely and specifically objects. Thus, any non–core claims must ultimately come before the district court. "Denying withdrawal in the pre–trial stages of a non–core proceeding only to accept it on a later date for the purpose of hearing the jury trial or reviewing the bankruptcy court's findings would unnecessarily consume judicial resources." *Gens v. Colonial Sav., F.A.*, No. 11-CV-05526 RMW, 2012 WL 993713, at *2 (N.D. Cal. Mar. 23, 2012). Withdrawal therefore turns on whether the Trustee's claims are core or non–core bankruptcy proceedings. *Id.*

The Court finds that the Trustee's adversary proceeding against Frager is a non–core proceeding. The Trustee's claims against Frager are premised on state law claims based on breach of fiduciary duty. State law claims have been found to be "non-core" where an adversary proceeding alleges state law claims with only a potential impact on the bankruptcy case and where those claims could have been brought in state court regardless of the bankruptcy proceeding. *Equipoint Fin. Network, Inc. v. Network Appraisal Servs., Inc.*, No. 09-CV-01252HCAB, 2009 WL 2135873, at *3 (S.D. Cal. July 15, 2009) (citing *In re Eastport Assoc.,* 935 F.2d 1071, 1076–77 (9th Cir. 1991) (holding suit for declaratory judgment could just as easily have been brought in state court, regardless of whether Eastport was in bankruptcy, and therefore was not a core proceeding). District courts have denied withdrawal of reference where state law claims are necessary to resolve the allowance of the defendants' claims in bankruptcy. *See In re Estate Financial, Inc.,* 2011 U.S. Dist. LEXIS 102850 (C.D. Cal. Sept. 9, 2011) (finding that counterclaims relating to

1  defendant's legal services which allegedly led to the ultimate bankruptcy of the plaintiff
2  were so closely related that resolution of the state law counterclaims are necessary to
3  resolve the allowance of the claim itself).  However, this is not such a case and clearly not
4  a dispute "which could arise only in the context of a bankruptcy case." *In re Gruntz,* 202
5  F.3d at 1081.

6        The Trustee's adversary action against Remar seeks to avoid a fraudulent transfer
7  under 11 U.S.C. §§ 548 and 550.  Statutorily, this is a core proceedings under 28 U.S.C.
8  § 157(b)(2)(H).  However, in the Ninth Circuit fraudulent conveyance claims are *Stern*
9  claims—"that is, proceedings that are defined as 'core' under § 157(b) but may not, as a
10 constitutional matter, be adjudicated as such . . . ." *Executive Benefits Ins. Agency v.*
11 *Arkison*, 134 S. Ct. 2165, 2172, 189 L. Ed. 2d 83 (2014).  The Supreme Court in *Arkinson*
12 held that the bankruptcy court must treat *Stern* claims as if they are non–core and proceed
13 under § 157(c)(1).  Thus, the Trustee's fraudulent conveyance claims against Remar must
14 be finally adjudicated by the district court absent the consent of all parties.  *See*
15 *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33, 56 (1989) (fraudulent conveyance claims
16 are "quintessentially suits at common law" that "constitute no part of the proceedings in
17 bankruptcy but concern controversies arising out of it"); *see also In Re Bellingham Ins.*
18 *Agency, Inc.,* 702 F.3d 553 (9th Cir. 2012) ("fraudulent conveyance claims, because they
19 do not fall within the public rights exception, cannot be adjudicated by non–Article III
20 judges").

21       As noted above, because the Trustee's claims against Remar and Frager
22 predominantly non–core or must be treated as non–core, the bankruptcy court may not
23 enter final judgment without consent of the parties.  Additionally, absent their express
24 consent, the bankruptcy cannot conduct a jury trial in the matter.  Remar and Frager, as
25 well as other defendants in the adversary proceeding, have filed timely jury demands, do
26 not consent to a jury trial before the bankruptcy court, and do not consent to the entry of
27 final judgment by the bankruptcy judge.  Interests in judicial economy support the
28 adjudication of the Trustee's claims against Remar and Frager in district court where they

would ultimately be tried or from which final judgment would ultimately be rendered.  As the bankruptcy courts may only make recommendations to the district courts in non–core proceedings, unnecessary costs can be avoided by a single proceeding in the district court.  28 U.S.C. § 157(c)(1); *see In re Orion Pictures,* 4 F.3d at 1101.  The Court, for cause shown, **GRANTS** Defendant Remar's and Frager's unopposed motions to withdraw the reference.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motions to withdraw the reference with respect to the Trustee's adversary proceeding against Remar and Frager Defendants.

**IT IS SO ORDERED**.

Dated:  June 20, 2016

Hon. Gonzalo P. Curiel
United States District Judge